IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

LARRY TYRONE SCOTT,

        Petitioner,

v.                                          CASE NO. 1:11-cv-240-MP-GRJ

SECRETARY, DEPT. OF
CORRECTIONS,

        Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner initiated this case by filing a *pro se* Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.  Doc. 1.  Respondent filed a response and an appendix with the state-court record.  Docs. 26, 28.  Petitioner did not file a reply, despite an opportunity to do so.  Upon due consideration of the Petition, the response, and the state-court record, the undersigned recommends that the Petition be denied.[1]

## Summary of State Court Proceedings

After a jury trial, Petitioner was found guilty of possession of cocaine with intent to sell, and possession of paraphernalia, and was sentenced on February 6, 2006, to seven years in prison on the cocaine charge, and time served on the paraphernalia charge.  Doc. 28-3 at 5, 18-19.  The charges stemmed from a controlled buy-bust between an informant and Petitioner on October 1, 2004.  The informant, Wayne Dunbar, was arrested that morning, and immediately volunteered to cooperate with law

---

[1]Because the Court may resolve the Petition on the basis of the record, the Court has determined that an evidentiary hearing is not warranted.  *See* Rule 8, Rules Governing Habeas Corpus Petitions Under Section 2254.

enforcement.  As part of his cooperation, Mr. Dunbar made several phone calls to Petitioner to arrange a drug buy, which was to take place at Mr. Q's, a retail store in Gainesville.  Petitioner was arrested at Mr. Q's, and his rental car was searched, where drugs were located in the door pocket of the vehicle.

The Florida First District Court of Appeal (DCA) affirmed, *per curiam*, the conviction and sentence on March 27, 2007.  Doc. 28-3 at 86.  Mandate issued April 12, 2007.  Doc. 28-3 at 87.

Petitioner has pursued multiple state postconviction remedies, which Respondent has outlined in the response.  They are summarized below, in roughly chronological order:

• On April 26, 2007, Petitioner filed a *pro se* Rule 3.800(a) postconviction motion. Doc. 28-3 at 89-91.  The trial court summarily denied the motion on January 22, 2008, and Petitioner appealed to the First DCA.  Doc. 28-3 at 107-08.  The First DCA *per curiam* affirmed on October 10, 2008.  Doc. 28-3 at 135.

• Petitioner filed a counseled Rule 3.850 postconviction motion in the trial court on April 9, 2008.  Doc. 28-4 at 3-28.  The state court found that grounds III – X of the motion were facially insufficient, and gave Petitioner an opportunity to amend.  The court reserved ruling on grounds I and II until the other grounds were amended.  Doc. 28-4 at 31.

• Petitioner filed an amended Rule 3.850 motion on April 7, 2009.  Doc. 8-4 at 34-59.  The amended motion was denied in part and dismissed in part on June 19, 2009.  Grounds i, ii, and viii were dismissed without prejudice to Petitioner amending his

motion, and grounds iii, iv, v, vi, vii, and ix were denied.  Doc. 28-4 at 63-73.  The trial

court's order specifically stated that this was a non-final and non-appealable order, but

Petitioner appealed.  Doc. 28-4 at 103.  On July 28, 2009, Petitioner filed a notice of

voluntary dismissal of his appeal.  Doc. 28-4 at 105-06.  The appeal was dismissed on

September 11, 2009.  Doc. 28-4 at 107.

   • While the appeal was pending, Petitioner filed a motion for reconsideration with

a supplement in the trial court.  Doc. 28-4 at 109-13, 115-17.  The motion was denied

because of the pendency of the appeal.  Doc. 28-4 at 119.

   • Also during the appeal, on September 2, 2009, Petitioner filed amendments to

grounds i, ii, and vii of his amended 3.850 motion, and simultaneously filed a "motion to

accept post conviction motion filing and hold disposition in abeyance pending appeal."

Doc. 28-4 at 125-39, 122-24.  The state court denied his motion to amend grounds i, ii,

and vii of his 3.850 motion because of the pending appeal, deemed the amended

grounds a successive 3.850, and denied it as untimely.  Accordingly, the court denied

his motion to hold in abeyance as moot.  Doc. 28-4 at 145-46.  Petitioner appealed the

denial.  Doc. 28-5 at 1.  On January 29, 2010, the First DCA *per curiam* reversed and

remanded because Petitioner's appeal was dismissed on September 11, 2009, and

thus the lower court had jurisdiction to rule on his motion to amend.  Doc. 28-5 at 35-36.

Mandate issued February 24, 2010.  Doc. 28-5 at 37.

   • While his appeal was pending and shortly after it was decided, Petitioner filed

four other motions.  The first was a "motion for postconviction relief alleging newly

discovered evidence, pursuant to Florida Rule of Criminal Procedure, Rule 3.850(b)(1)"

on November 22, 2009.  Doc. 28-5 at 39-47.  The second was a motion to supplement

Rule 3.850 motion for postconviction relief.  Doc. 28-5 at 50-54.  After the First DCA remanded his case back to the circuit court, Petitioner filed a motion entitled "Defendant's Third Amendment to Grounds 1 at 8 of Rule 3.850 Motion filed April 7, 2009."  Doc. 28-5 at 59-65.  He also filed "Defendant's Fourth Amendment to Postconviction Rule 3.850 Motion."  Doc. 28-5 at 74-97.  These motions were denied in an order dated July 8, 2010, which denied postconviction relief.  Doc. 28-5 at 119-123.  Petitioner filed a motion for rehearing, which was denied.  Doc. 28-6 at 7-10; 12.  Petitioner appealed, and the First DCA *per curiam* affirmed on December 1, 2010.  Doc. 28-6 at 50.  Mandate issued on December 29, 2010.  Doc. 28-6 at 49.

• Petitioner filed a "motion for final order on denied grounds form the non-final, non-appealable order dated June 19, 2009."  Doc. 28-6 at 52-55.  Finding that the record supported Petitioner's contention that the trial court never entered a final order on Petitioner's amended 3.850 motion, dated April 7, 2009, the trial court granted his motion and denied his claims in a final order.  Doc. 28-6 at 58-59.  Petitioner filed a motion for rehearing, which was denied on March 4, 2011.  Doc. 28-6 at 108-110, 111.  Petitioner appealed the denial of his underlying Rule 3.850 motion, and the First DCA *per curiam* affirmed on June 6, 2011.  Doc. 28-7 at 25.  Petitioner filed a motion for rehearing and rehearing en banc, which was denied on August 2, 2011.  Doc. 28-7 at 27.  Mandate issued on August 18, 2011.  Doc. 28-7 at 24.

• Petitioner filed a *pro se* state habeas petition in the First DCA on December 18, 2008.  Doc. 28-7 at 34-44.  On January 9, 2009, the court denied the petition alleging ineffective assistance of appellate counsel "on the merits" as to the scoresheet issue, and ordered the state to show cause why the petition should not be granted as to the

argument that appellate counsel was ineffective for failing to order a transcript of the Nelson hearing.  Doc. 28-7 at 117.  After the state responded, the state habeas petition was denied on the merits *per curiam* by the First DCA.  Doc. 28-8 at 67.

   • Petitioner filed a 3.800(a) motion to correct illegal sentence on October 16, 2009.  Doc. 28-12 at 104-06.  The court construed the motion as one under Rule 3.800(c), and dismissed it as untimely.  Doc. 28-12 at 109.  Petitioner appealed, and the state filed a motion to dismiss the appeal.  Doc. 28-12 at 129.  The motion to dismiss was denied, but the First DCA *per curiam* affirmed the dismissal of Petitioner's motion.  Doc. 28-12 at 133; 150.  Mandate issued April 19, 2010.  Doc. 28-12 at 151.

   • On August 12, 2010, Petitioner filed a *pro se* Petition for Writ of Habeas Corpus in the state trial court.  Doc. 28-8 at 69-79.  The state court noted that the relief sought should be pursued by a motion for postconviction relief, and directed that the "petition" be re-filed in Petitioner's felony case.  Doc. 28-8 at 143-44.  After it was refiled, the motion was summarily denied as untimely on September 1, 2010.  Doc. 28-9 at 1-2.  Petitioner filed a motion for rehearing, which was denied.  Doc. 28-9 at 8.

   • Petitioner filed a "motion for postconviction relief alleging newly discovered evidence pursuant to Florida Rule of Criminal Procedure 3.850(b)(1)" on October 20, 2010.  Doc. 28-9 at 11-16.  The trial court summarily dismissed the motion on October 22, 2010. Doc. 28-9 at 21-22.  Petitioner filed a motion to reinstate, which was granted on January 4, 2011.  The motion was reinstated and denied.  Doc. 28-9 at 37-41.

   • Petitioner filed a petition for writ of habeas corpus in Columbia County on December 15, 2010.  Doc. 28-9 at 43-72.  The petition was summarily denied.  Doc. 28-9 at 75-77.  Petitioner filed a motion for rehearing, which was denied on January 27,

2011.  Doc. 28-9 at 85.  Petitioner appealed the denial of his petition, and it was *per curiam* affirmed by the First DCA on August 16, 2011.  Doc. 28-10 at 29.  Mandate issued November 1, 2011.  Doc. 28-10 at 28.  Petitioner's motions for rehearing and rehearing en banc were denied.  Doc. 28-10 at 31.

•  Petitioner filed a petition for writ of habeas corpus in on February 4, 2011.  Doc. 28-10 at 37-44.  The state court noted that the relief sought should be pursued by a motion for postconviction relief, and directed that the "petition" be re-filed in Petitioner's felony case.  Doc. 28-10 at 47-48.  After it was refiled, the motion was summarily denied as untimely on March 4, 2011.  Doc. 28-10 at 50-51.

•  Petitioner filed a 3.800(a) motion to correct illegal sentence on April 26, 2011.  Doc. 28-10 at 55-60.  The motion was denied on May 4, 2011, after the trial court concluded that a 3.800(a) motion was not proper, and considered under 3.850 the motion did not meet the oath requirement and was procedurally defective.  The court also noted that even if the motion was properly sworn, it was untimely.  The court advised Petitioner that the continued filing of frivolous motion would result in sanctions, such as the forfeiture of gain time.  Doc. 28-10 at 62-65.  Petitioner filed a motion for rehearing, which was denied on May 25, 2011.  Doc. 28-10 at 71.

•  On May 3, 2011, Petitioner filed a "motion to vacate judgment of conviction and sentence and to accept grounds as newly discovered evidence and or manifest of injustice."  Doc. 28-10 at 74-77.  The state court ordered him to show cause why he should not be barred from any further *pro se* filings in the case.  Doc. 28-10 at 84-86.  After Petitioner responded, the state court denied his motion and barred him from any further *pro se* filings in his felony case .  Doc. 28-10 at 102-105.  Petitioner appealed,

and the First DCA *per curiam* affirmed on November 30, 2011.  Doc. 28-12 at 46.

Mandate issued December 28, 2011.  Doc. 28-12 at 45.

> • Petitioner filed another petition for writ of habeas corpus in Columbia county on May 5, 2011.  Doc. 28-12 at 48-53.  The court transferred the Petition to Alachua County.  Doc. 28-12 at 65.  After Alachua County received the petition, the court directed the clerk to re-file it in Petitioner's felony case.  Doc. 28-12 at 69-70.  Petitioner subsequently filed a motion to dismiss his pending motion, which the court granted on August 18, 2011.  Doc. 28-12 at 72, 75.

> • On September 26, 2011, Petitioner filed a petition for writ of habeas corpus in Columbia County.  Doc. 28-12 at 78-89.  Again, it was transferred to Alachua County. Doc. 28-12 at 95.  After it was transferred, it was dismissed because Petitioner was barred from *pro se* filings.  Doc. 28-12 at 98.

Petitioner filed the instant petition for federal habeas relief on November 9, 2011.

Doc. 1.  Respondent does not contest the timeliness of the petition.  Doc. 26 at 13-14.

### Section 2254 Standard of Review for Ineffective Assistance Claims

The Anti-Terrorism and Effective Death Penalty Act (AEDPA) imposes limitations on the scope of this Court's review.  Under 28 U.S.C. § 2254(d)(2), a federal court may not grant a state prisoner's application for a writ of habeas corpus based on a claim already adjudicated on the merits in state court unless that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Under § 2254(e)(1), "a determination of a factual issue made by a State court shall be presumed to be correct,"

and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  "'[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'"  *Burt v. Titlow*, ___ U.S. ___,  2013 WL 5904117, *4 (2013)(quoting  *Wood v. Allen*, 558 U.S. 290, 301, 130 S.Ct. 841(2010)).

As to legal findings, a petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  § 2254(d)(1); *see Burt*, 2013 WL 5904117, *4 (standard for reviewing claims of legal error by state courts is "highly deferential").  This standard "recognizes a foundational principle of our federal system: State courts are adequate forums for the vindication of federal rights."  *Id*. This highly deferential standard carries special force in habeas cases asserting ineffective assistance claims: "Especially where a case involves such a common claim as ineffective assistance of counsel under *Strickland*[2]—a claim state courts have now adjudicated in countless criminal cases for nearly 30 years—'there is no intrinsic reason why the fact that a man is a federal judge should make him more competent, or conscientious, or learned . . . than his neighbor in the state courthouse.'"  *Id*. (quoting *Stone v. Powell*, 428 U.S. 465, 494, n. 35, 96 S.Ct. 3037 (1976).

---

[2]*Strickland v. Washington*, 466 U.S. 668, 686 (1984) (holding that to prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy.  A court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the prejudice prong).

In view of the deference afforded to the state courts' adjudication of constitutional claims, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court. AEDPA requires 'a state prisoner [to] show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement.'" *Id*. (quoting *Harrington v. Richter*, 562 U.S. ___, 131 S.Ct. 770, 786–787 (2011). "'If this standard is difficult to meet'—and it is—'that is because it was meant to be.'" *Id*. (quoting *Harrington*, 131 S.Ct. at 786). "We will not lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Id*. (quoting *Harrington*, 131 S.Ct. at 786).

Because Petitioner's claims raise the issue of counsel's effectiveness, a review of *Strickland*'s prejudice and performance prongs is appropriate. *Strickland*, 466 U.S. at 686*; see also Tafero v. Wainright*, 796 F.2d 1314, 1319 (11ᵗʰ Cir. 1986). With regard to the performance prong of *Strickland*, a defendant must provide factual support for his contentions that counsel's performance was constitutionally deficient. *Smith v. White*, 815 F.2d 1401, 1406-07 (11ᵗʰ Cir. 1987). The court must consider counsel's performance in light of all of the circumstances at that time and indulge in a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance. *Strickland*, 466 U.S. at 689-90. To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Grayson v. Thompson*,

257 F.3d 1194, 1216 (11th Cir. 2001) (emphasis omitted).  This standard is objective, and "it matters not whether the challenged actions of counsel were the product of a deliberate strategy or mere oversight."  *Gordon v. United States*, 496 F.3d 1270, 1281 (11th Cir. 2007).  "The relevant question is not what actually motivated counsel, but what reasonably could have motivated counsel."  *Id*.

To show prejudice, a defendant must show more than simply that counsel's unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding."  *Strickland*, 466 U.S. at 693.  Instead, a defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id*. at 694.  A "reasonable probability is defined as a probability sufficient to undermine confidence in the outcome."  *Id*.  Where a defendant challenges a not-guilty plea based on ineffective assistance of counsel, he must "show that there is a reasonable probability that, but for counsel's errors, he would have pleaded guilty and would not have insisted on going to trial."  *Coulter v. Herring*, 60 F.3rd 1499, 1504 (11th Cir. 1995) (internal quotations omitted).

The Eleventh Circuit has recognized that given these principles and presumptions "the cases in which habeas petitioners can properly prevail . . . are few and far between."  *Chandler v. United States*, 218 F.3d 1305, 1313 n.15 (11th Cir. 2000) (en banc).  This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether a reasonable lawyer could have acted in the circumstances as defense counsel acted.  *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000).

## Discussion

***Ground 1: "Petitioner's conviction has been obtained in violation of his Fifth, Sixth, Fourteenth Amendment Rights to be tried to a fair and impartial jury of his peers under the guarantees of the United States Constitution where defense counsel was ill prepared for trial."***

In Ground 1, Petitioner raises a number of sub-claims in disjointed fashion.  The Court will address each in turn.

### *Sub-claim 1: Shelton Claim*

In his first sub-claim, Petitioner contends that his conviction for violating Fla. Stat. § 893.13, violates due process because the statute was declared unconstitutional by *Shelton v. Secretary, Department of Corrections*, 802 F.Supp. 2d 1289 (M.D. Fla. 2011). Although it is clear that this claim is unexhausted, as Respondent sets out in the response, because the claim has no merit the Court will address the claim.[3]

Petitioner's claim is foreclosed by the Eleventh Circuit's decision in *Shelton v. Sec'y, Dep't of Corr.*, 691 F.3d 1348 (11th Cir. 2012).  By way of background, following Florida Supreme Court cases holding that the State was required to prove *mens rea* in controlled-substance cases, and that the requisite *mens rea* includes both knowledge of the presence of the controlled substance as well as knowledge of its illicit nature, the Florida legislature enacted Fla. Stat. § 893.101, amending the Drug Abuse Prevention and Control Act.  The amendment expressly provided that knowledge of the illicit nature of the controlled substance was not an element of the offense, and created an affirmative defense of lack of knowledge of the illicit nature of the substance.  The

---

[3] Because it is clear that Petitioner is not entitled to relief on the merits, the Court may deny relief notwithstanding any failure to exhaust.  *See* 28 U.S.C § 2254(b)(2).

statute did not eliminate the element of knowledge of the presence of the substance. "In short, the amendment did not completely eliminate *mens rea* for Florida drug crimes: it converted one aspect of *mens rea* from an element of the crime into an affirmative defense." *Shelton*, 691 F.3d at 1350-51.

As the Eleventh Circuit explained, the Florida Supreme Court upheld the constitutionality of the amendment in *State v. Adkins*, 96 So.3d 412 (Fla. 2012). In *Adkins*, the Florida Supreme Court examined the history of criminal statutes that omitted a scienter requirement and were nonetheless constitutional as compared to those statutes where the lack of scienter rendered them unconstitutional. The court explained that § 893.101 fell within the former because 1) it punished an affirmative act—possessing or delivering controlled substances—rather than merely a passive activity, such as simply being a felon present in a city more than five days; and 2) the provision did not threaten to chill otherwise protected activities.

In *Shelton*, the Eleventh Circuit reviewed habeas claims in which the petitioner challenged the constitutionality of Florida's drug statutes. The Court held that *Adkins* was not an unreasonable application of federal law. The district court in *Shelton* had determined that Fla. Stat. § 893.101 was facially unconstitutional because (1) its felony penalties are too harsh to allow omission of a *mens rea* requirement; (2) violations lead to substantial social stigma and so *mens rea* is required; and (3) it reaches inherently innocent conduct without a *mens rea* component. On appeal, the Eleventh Circuit concluded that the district court had failed to give the proper deference under the AEDPA to the state courts' adjudication of the issue. Specifically, the Eleventh Circuit

held that the Florida Supreme Court's adjudication of the facial constitutionality of §

893.101 on the merits in *Adkins* was not "contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court."

*Shelton*, 691 F.3d at 1355.  The decision in *Shelton* is binding upon this Court.

Accordingly, Petitioner's claim is without merit.

### Sub-claim 2: Denial of Right to Confrontation

Petitioner next claims that his right to confrontation was denied because

witnesses testified at trial about their recollections of phone conversations between

Petitioner and the informant, Wayne Dunbar.  Respondent contends that this ground is

unexhausted because Petitioner failed to present it in any of his many state court

proceedings.  Petitioner declined to file a reply contesting this argument.

Before bringing a habeas action in federal court, a petitioner must exhaust all

state court remedies that are available for challenging his conviction, either on direct

appeal or in a state post-conviction motion.  28 U.S.C. § 2254(b)(1), (c).  Exhaustion

requires that prisoners give the state courts a "full and fair opportunity" to resolve all

federal constitutional claims by "invoking one complete round of the State's established

appellate review process."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  To

properly exhaust a federal claim, a petitioner must "fairly present" his federal claim in

each appropriate state court, thereby affording the state courts a meaningful

opportunity to "pass upon and correct alleged violations of its prisoners' federal rights."

*Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quotation omitted).  A petitioner must "do

more than scatter some makeshift needles in the haystack of the state court record"; a

reasonable reader should be able to understand the factual and legal bases for the federal claim. *McNair v. Campbell*, 416 F.3d 1291, 1297 (11th Cir.2005) (quotations and citations omitted).  A petitioner may raise a federal claim in state court "by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such claim on federal grounds, or by simply labeling the claim 'federal.' " *Baldwin*, 541 U.S. at 32.  When a petitioner fails to properly exhaust a federal claim in state court, and it is obvious that the unexhausted claim would now be procedurally barred under state law, the claim is procedurally defaulted. *Bailey v. Nagle*, 172 F.3d 1299, 1303 (11th Cir. 1999).

The record reflects that Petitioner did not raise this confrontation clause claim as a federal constitutional issue in state court at any time and, therefore, the federal claim would now be procedurally barred in state court.  Petitioner has shown neither cause nor prejudice to overcome such procedural default, and indeed Petitioner has not even filed a reply contesting the state's argument.  Accordingly, because the claim is unexhausted and procedurally barred, Petitioner is entitled to no relief on this claim.

### Sub-Claim 3: Admission of Evidence

In his third sub-claim, Petitioner contends that physical evidence admitted at his trial, consisting of cocaine, baggies, money, a rental car agreement, and a cellular phone was "extremely prejudicial for a smorgasbord of reasons," warranting habeas relief.  Doc. 1 at 7.  Each of these reasons will be discussed separately, below.

The first of the "smorgasbord" of reasons Petitioner advances in support of his claim that the evidence was "exremely prejudicial" is that Officer Noland's testimony

was irrelevant and that by reading her deposition into the record Petitioner was denied

his ability to confront her.  Respondent asserts that this specific claim, regarding the

violation of his confrontation clause rights, was never presented to the state courts.

Rather, Petitioner presented a claim in state court of ineffective assistance of counsel

claiming that Officer Noland's testimony was one of six instances of ineffective

assistance of counsel in Petitioner's original 3.850 motion, which he later amended and

re-asserted the claim.  The state court denied this ground and said:

> Defendant alleges that counsel erred by allowing Officer Jennifer Noland's
> deposition testimony to be introduced at trial.  The *purpose* of the
> deposition was to perpetuate the officer's testimony for trial.  Thus,
> counsel did not err by failing to object to the use of the deposition
> testimony during the trial.  This claim is without merit.

Doc. 28-5 at 121.  (Citations omitted.)

As a freestanding claim that Petitioner's confrontation clause rights were

violated, his claim is unexhausted because it was never presented to the state courts,

as discussed above.  As a claim that his trial counsel was ineffective for failing to object

to the introduction of the deposition, this claim also fails, because such an objection

would have been without merit as the introduction of the deposition did not violate

Petitioner's confrontation clause rights, and the purpose of the deposition was to

perpetuate Officer Noland's testimony.  The purpose of a deposition under Fla. R. Crim.

P. 3.190(I), as opposed to a discovery deposition, is to perpetuate testimony when a

witness will not be available for trial.  *Blanton v. State*, 978 So. 2d 149 (Fla. 2008).

Accordingly, the state court's adjudication of this claim was not contrary to clearly

established federal law, did not involve an unreasonable application of clearly

established federal law, and was not based on an unreasonable determination of the

facts in the light of the evidence presented in state court proceedings.  Therefore,

Petitioner is not entitled to relief.

The second of the "smorgasbord" of reasons Petitioner advances in support of

his argument that the evidence admitted was "extremely prejudicial" is that Wayne

Dunbar and Detective Mullins testified about prior drug deals involving Petitioner in

violation of the "Williams Rule."  This claim was never presented to the state courts, but

rather, in Petitioner's 3.850 motion Petitioner raised a claim of ineffective assistance of

counsel Petitioner arguing that the admission of testimony about prior drug transactions

was one of the six instances of ineffective assistance of counsel.  This claim was

denied by the state court. The trial court wrote:

> As to ground (iii), Defendant alleges that trial counsel was ineffective for
> failing to object to testimony about Defendant's prior uncharged drug
> deals with Wayne Dunbar, the cooperating defendant.  First, Defendant
> contends that Dunbar was improperly permitted to testify that Defendant
> gave him drugs on credit.  Second, Defendant claims that Detective
> Mullins and Sergeant Kays were improperly permitted to testify about prior
> drug deals between Defendant and Dunbar.  After a careful review of the
> record, this Court notes that Detective Mullins and Sergeant Kays did not
> testify about the prior drug deals.  Third, in support of his claim, Defendant
> mistakenly attributes the testimony of Detective Bristow to Detective
> Mullins.  Detective Bristow stated: "when we drove in the parking lot, he
> identified the vehicle, the PT Cruiser that he had remembered seeing Mr.
> Scott driving in previous deals with him.  And he identified Ms. Scott
> beside the vehicle.  Fourth, Defendant alleges that the State should have
> filed a Williams rule notice regarding the testimony about his prior drug
> deals with Dunbar.
>
> The evidence presented at trial regarding Defendant's prior drug deals
> with Dunbar was not Williams rule evidence.  Rather, it was a relevant and
> inseparable part of the act which was in issue in Defendant's case.
> "Inseparable crime evidence is admitted not under 90.404(2)(a) as similar
> fact evidence but under 90.402 because it is relevant."  *Hunter v. State*,

660 So. 2d 244, 251 (Fla. 1995).  Therefore, there was no need for the State to comply with the ten-day notice provision in section 90.404(2)(b). Because evidence of Defendant's prior drug deals with Dunbar is relevant to whether Defendant committed the instant offense, trial counsel did not commit error by failing to object.

Doc. 28-4 at 65-66.  (Internal citations omitted.)

Thus, as a freestanding claim, Petitioner's argument that the testimony violated the *Williams* Rule, is unexhausted and procedurally defaulted.  Even if this claim had been exhausted, Petitioner's argument involves a state court's interpretation and application of Florida law and, therefore, is not cognizable on federal habeas.  *See, e.g., Branan v. Booth,* 861 F. 2d 1507, 1508 (11th Cir. 1988) ("Although petitioner alleges violations of federal law, it is clear that this petition is based exclusively on state law issues which were merely 'couched in terms of equal protection and due process.'") (citing *Willeford v. Estelle,* 538 F. 2d 1194, 1196-98 (5th Cir. 1976)).

As a claim that trial counsel was ineffective for failing to object to the introduction of the evidence, the claim is meritless. The state court determined that the evidence presented at trial was not *Williams* Rule evidence and, thus, trial counsel did not commit error by failing to object.  Accordingly, on this record, Petitioner has failed to show that the state court's rejection of this claim was contrary to, or an unreasonable application of *Strickland,* or an unreasonable determination of the facts in light of the evidence adduced in state court.

The third of the "smorgasbord of reasons" is that Sergeant Kays testified "as an expert in generalized and specific drug use, quantities, characteristics, and mannerisms of the drug community," despite not being qualified as an expert witness or listed as

such when Petitioner made his discovery demand.  As Respondent point out this claim

was never presented to the state courts but, rather, Petitioner presented a claim

regarding the admission of Sergeant Kays' "expert" testimony as one of six instances of

ineffective assistance of counsel in Petitioner's original 3.850 motion, which he later

amended and re-asserted the claim.  This claim was denied by the state court, which

wrote:

> As to ground (v), Defendant alleges that trial counsel was ineffective for
> failing to object to the State's expert testimony.  Defendant contends that
> Detective Mullins and Sergeant Kays "were improperly permitted to testify
> without being qualified as experts to what amount of drugs constitutes
> personal use as opposed to that for sale."  Defendant claims that there
> were also improperly permitted to testify regarding whether fingerprints
> were able to obtained from plastic baggies in other cases.  Defendant
> mistakenly attributes the testimony of Detective Bristow to Detective
> Mullins.  This court finds that *Lewis v. State*, 754 So. 2d 897 (Fla. 1st DCA
> 2000), which Defendant cites to in support of his claim, is distinguishable
> from the instant case.  First, in *Lewis*, "the arresting officer never observed
> [the appellant] trying to sell or deliver the drugs. Id. at 901.  Second, "the
> evidence indicated nothing unusual regarding the manner in which the
> cocaine rocks ere packaged to suggest that [the appellant] intended to sell
> or deliver the drugs rather than use them personally."  Id. at 901-902.
>
> Here, Detective Bristow, acting as a case agent, conducted controlled
> phone calls with Dunbar "to set up a meet to purchase more cocaine."
> After a series of phone calls, Defendant advised Dunbar to meet him at
> Mr. Q's.  Detective Bristow drove to Mr. Q's with Dunbar and Detective
> Nordberg to meet Defendant.  When they drove in the parking lot, Dunbar
> identified Defendant's vehicle and Defendant beside the vehicle.
> Sergeant Kays, Detective Noland, and Detective Lormil also drove to Mr.
> Q's.  Sergeant Kays and Detective Noland parked behind Defendant's PT
> Cruiser and Defendant stepped out of the vehicle.  Sergeant Kays stood
> behind Detective Noland as she searched Defendant's vehicle and he
> saw what she found in the vehicle.  He stated: "in the map pocket on the
> driver's door was the crack cocaine that you had just handed me, the
> same crack cocaine that I just showed everyone in the jury."  Unlike the
> officers in Lewis, the officers in the instant case observed Defendant
> trying to sell the drugs.  In addition, there was testimony presented at trial
> regarding the packaging of the cocaine.  Detective Bristow testified that
> the cocaine appeared to be packaged for sale because it was packaged in

a couple of different baggies.  Sergeant Kays testified that the packaging was "consistent with street level sales."

The officers in the instant case testified about what they personally perceived.  Therefore, they did not offer expert testimony.  The "opinion of a lay witness can only be given after he had testified as to facts or perceptions underlying his opinion."  *Beck v. Gross*, 499 So. 2d 886, 889 (Fla. 2d DCA 1986).  The officers' testimony regarding the drugs was based on evidence that Dunbar arrange[d] to purchase drugs from Defendant at Mr. Q's, Defendant was identified by Dunbar at Mr. Q's, and Defendant had cocaine that was packaged in "a couple of different baggies" in his vehicle.

Even if trial counsel did error by failing to object to testimony that fingerprints could not be obtained from baggies in other cases, Defendant fails to show sufficient prejudice.  First, Sergeant Kays and Detective Noland parked behind Defendant's vehicle and saw Defendant step out of the vehicle.  Second, Detective Noland testified: "I went to the car, opened up the driver's door, and as soon as I opened it up, you could see the baggy.  You could se all the crack cocaine just kind of sitting there in a little cargo pocket on the door."  Third, Dunbar testified that the drugs were found in the side of the driver's door.  Dunbar stated he knew to look there for the drugs.  Fourth, Detective Bristow testified that, if Defendant did not have the narcotics on his person, Dunbar advised him that "in the past he'd carried it either in the armrest of the vehicle or in the driver's side door pocket."  Fifth, Sergeant Kays testified that he was right behind Detective Noland as she opened up the driver's door and he saw what she found in the vehicle.  He stated: "in the map pocket on the driver's door was the crack cocaine that you had just handed me, the same crack cocaine that I just showed everyone in the jury."  Defendant fails to show that, but for trial counsel's failure to object, the result of his trial would have been different.  This claim is without merit.

Doc. 28-4 at 67-69.  (Internal citations omitted.)

As a freestanding claim this his claim is unexhausted because it was never presented to the state courts.  As a claim that trial counsel was ineffective for failing to object to Sergeant Kays testimony, Petitioner's claim has no merit.  The state court first determined that Sergeant Kays did not offer expert testimony, but testified as to what he personally observed.  Thus, any objection based on Sergeant Kays' "expert"

testimony would have ben meritless.  Furthermore, the state court discussed the testimony at issue in detail, and determined that Petitioner failed to show prejudice.  On this record, Petitioner has failed to show that the state court's rejection of this claim was contrary to, or an unreasonable application of *Strickland,* or an unreasonable determination of the facts in light of the evidence adduced in state court.

### Sub-Claim 4: Ineffective Assistance of Counsel

Petitioner's fourth sub-claim is that defense counsel did not prepare himself for trial, and a competent attorney would not have proceeded to trial under such a circumstance.  Petitioner alleges no facts to support his allegation that trial counsel was unprepared, and does not describe what his counsel should have done, or show how his counsel's alleged lack of preparation impacted the trial.  Petitioner's wholly conclusory allegations, which are not supported by *any* factual allegations, do not warrant federal habeas relief.

AEDPA requires a state prisoner to "show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement.'"  *Harrington v. Richter,* 562 U.S. ___, 131 S.Ct. 770, 786–787 (2011).  The conclusory allegations recited by Petitioner do not suggest that the state court's determination of his claim that his counsel was not ineffective is subject to fairminded disagreement.  Furthermore, Petitioner cannot show that but for trial counsel's "unpreparedness," the trial would have had a different outcome.  On this record, Petitioner has failed to show that the state court's rejection of this claim was contrary to, or an unreasonable application of

*Strickland,* or an unreasonable determination of the facts in light of the evidence

adduced in state court.

**Ground 2: "Petitioner's conviction has been obtained in violation of his Fifth, Sixth, and Fourteenth Amendment rights to trial by fair and impartial jury of his peers where defense counsel did not object to the admission of crimes not charged in support of proof of conviction."**

Petitioner raises two separate sub-claims in Ground 2. These claims are: (1) that

the testimony of Wayne Dunbar about Petitioner's other crimes, wrongs, of bad acts

was inadmissible because it did not fall within an exception to § 90.404, and the state's

failure to comply with the ten day notice requirement of Fla. Stat. § 90.404(2)(a) violated

Petitioner's due process rights; and (2) that defense counsel was deficient for failing to

prevent the admission "of this prejudicial evidence," – in other words, the testimony of

Wayne Dunbar about Petitioner's prior crimes.

Respondent argues that Petitioner's first sub-claim is unexhausted because

Petitioner did not present the claim in Petitioner's direct appeal.  The Court agrees that

this claim is unexhausted and, thus, procedurally defaulted.  However, even if the claim

had been exhausted, the claim is not cognizable on federal habeas review because the

claim involves a state court's interpretation and application of Florida law, and not

federal law.  *Branan* 861 F. 2d 1507, 1508.  Accordingly, Petitioner is not entitled to

relief on this claim.

With respect to Petitioner's second sub-claim, Respondent describes the

unusual and lengthy procedural history of the claim, which the Court will not recount

here.   Assuming the claim is exhausted, Petitioner is still not entitled to relief.  This

claim is related to Petitioner's claim in Ground 1, Sub-Claim 3, in which Petitioner

argues that Dunbar's testimony was one of a "smorgasbord of reasons" that caused

evidence admitted at trial to be "extremely prejudicial."  As discussed above, the state

court rejected Petitioner's claim that his trial counsel had been ineffective for failing to

object to the introduction of Dunbar's testimony about his prior drug deals. Doc. 28-4 at

65-66.

As discussed, *supra,* pp. 16-17, the state court determined that the evidence

presented at trial was not *Williams* Rule evidence–a finding that is binding on this

Court–and thus, trial counsel did not commit error by failing to object because such an

objection would have been fruitless.  On this record, Petitioner has failed to show that

the state court's rejection of this claim was contrary to, or an unreasonable application

of *Strickland,* or an unreasonable determination of the facts in light of the evidence

adduced in state court.

**Ground 3: "Petitioner's conviction was obtained in violation of his Fourth and Sixth Amendment rights under the United States Constitution where fruits of an illegal search and seizure were introduced at trial as substantive proof of Petitioner's guilt."**

Petitioner contends that he is entitled to federal habeas relief because his trial

counsel failed to suppress the evidence seized from Petitioner's vehicle.  To prevail on

his claim that counsel rendered deficient performance in this regard, Petitioner must

establish that a motion to suppress would have asserted a meritorious Fourth

Amendment claim.  *Kimmelman v. Morrison*, 477 U.S. 365 (1986).

The state court denied this ground and said:

As to ground (vii), Defendant alleges that his right to be free from
unreasonable search and seizure was violated. Defendant contends that
there was no probable cause for his arrest and that his vehicle was
illegally searched. Defendant claims that trial counsel was ineffective for

failing to file a motion to suppress. "Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must ... prove that his Fourth Amendment claim is meritorious." *Zakrzewski v. State*, 866 So.2d 688 (Fla. 2003) (*quoting Kimmelman v. Morrison*, 477 U.S. 365, 375 (Fla. 1986)).

This Court notes that *State v. Clark*, 986 So.2d 625 (Fla. 2d DCA 2008), is factually similar to the instant case. In *Clark*, the informant's motive for cooperating with the police was the hope of obtaining leniency. *Id.* at 626. She had not previously provided information to the detective, and her reliability was untested. *Id.* She did not know the defendant's name, but referred to him by his nickname. *Id.* She described the defendant and the vehicle that he used to make deliveries of crack cocaine. *Id.* at 626-627. The informant spoke with the defendant on a cell phone with the speaker function activated so that the detective could hear both sides of the conversation. *Id.* at 627. The informant instructed the defendant to "drive down an alley, pull into a carport at the designated address, and beep his horn." *Id.* The defendant indicated that he was approximately two minutes away from the designated address. *Id.* Approximately two minutes later, the detective saw the vehicle that the informant described turn into the alley. *Id.* After the defendant reached the designated address, pulled into the carport, beeped the horn, and was identified by the informant, the detective signaled other police officers to make an arrest. *Id.*

In *Clark*, the State appealed the trial court's order that granted the defendant's motion to suppress the controlled substances that were found in his motor vehicle. *Id.* at 626. The Second District Court of Appeal held that the trial court erred in granting the defendant's motion to suppress because the police officers had probable cause to arrest the defendant and they were authorized to search the passenger compartment of his vehicle to his lawful arrest based on his status as a recent occupant of the vehicle. *Id.* at 631-632. the court applied a totality of the circumstances analysis, and stated that "[a]n informant's veracity may be established by proof that the informant has provided detailed and verifiable information on the occasion under review even if the informant has not provided reliable information in the past." *Id.* at 630 (*citing Everette v. State*, 736 So.2d 726, 727 (Fla. 2d DCA 1999)). The court reasoned that, "[u]nder these circumstances, the police officers had probable cause to arrest [the defendant] as soon as he stepped out of his pickup truck because they had verified all th details 'except for the final one of the commission of the crime.'" *Id.* at 630 (*citing State v. Flowers*, 566 U.S. 50, 51 (Fla. 2d DCA 1990)). In addition, "once a law enforcement officer determines that there is probable cause to arrest a recent occupant of a motor vehicle, 'it is reasonable to allow officers to ensure their safety and to preserve

evidence by searching the entire passenger compartment." *Id.* at 629 (*citing Thornton v. United States*, 541 U.S. 615, 623 (2004)).

First, just as in *Clark*, the officers in ths instant case had probable cause to arrest Defendant. Dunbar and Detective Bristow conducted controlled phone calls with Defendant while Dunbar was in custody. *See* Trial Transcript at 176 (lines 11-18). Defendant advised Dunbar to meet him at Mr. Q's. *Id.* at 177 (lines 17-21). When Dunbar, Detective Bristow, and Detective Norberg drove into the parking lot of Mr. Q's, Dunbar identified Defendant's vehicle and identified Defendant beside the vehicle. *Id.* at 177 (lines 24-25 - 178 (Fla. 1-4). Next, the contact team made contact with Defendant. *Id.* at 178 (lines 20-25) - 179 (lines 1-2). Second, just as in Clark, the search of Defendant's vehicle was valid because it was incident to a lawful arrest of a recent occupant of the vehicle.

Furthermore, this Court finds that *Miller v. State*, 780 So.2d 151 (Fla. 2d DCA 2000), which Defendant cites in support of his claim, is distinguishable from the instant case. In *Miller*, the supplier did not go to the expected meeting place. *Id.* at 151. Instead, he went to pick up lunch at a restaurant and was stopped approximately one and one half blocks away from the expected meeting place. *Id.* Here, Defendant advised Dunbar to meet him at Mr. Q's. *See* Trial Transcript at 177 (lines 17-21). After arriving at Mr. Q's, Dunbar identified Defendant's vehicle and identified Defendant beside the vehicle. *Id.* at 177 (lines 24-25) - 179 (lines 1-2). Then, the contact team made contact with Defendant. *Id.* at 178 (lines 20-25) - 179 (lines 1-2). In contrast to *Miller*, the information given by Dunbar in the instant case was sufficiently reliable to provide officers with the probable cause required to search Defendant or his vehicle. **Because Defendant fails to show that his Fourth Amendment claim would not have been successful, trial counsel did not commit error by failing to file a motion to suppress**. Defendant also fails to show sufficient prejudice. This ground is without merit.

Doc. 28-4 at 70-72. (Emphasis added.)

The state court identified the controlling law and discussed the facts of the case

in detail, and found that Petitioner's contention that trial counsel should have filed a

motion to suppress was without merit because such a Fourth Amendment claim would

have been unsuccessful.  The state court also found that Petitioner did not show

prejudice.  AEDPA requires a state prisoner to "show that the state court's ruling on the

claim being presented in federal court was so lacking in justification that there was an

error . . . beyond any possibility for fairminded disagreement.'"  *Harrington v. Richter,*

562 U.S. ___, 131 S.Ct. 770, 786–787 (2011).  The facts recited by Petitioner do not

suggest that the state court's determination of this claim is subject to fairminded

disagreement.

Accordingly, on this record, the Court concludes that Petitioner has failed to

show that the state court's rejection of this claim was contrary to, or an unreasonable

application of *Strickland,* or an unreasonable determination of the facts in light of the

evidence adduced in state court.

**Ground 4: "Petitioner's conviction was obtained in violation of his Fifth and Fourteenth Amendment rights to a fair and impartial trial guaranteed by the United States Constitution where the state court denied claims of newly discovered . . . evidence"**

In this ground, Petitioner contends that he discovered his first cousin, Reginald

Scott— who he alleges was with him on the day of the offense— was actually the one

who placed the cell phone calls at issue, and the cocaine found in Petitioner's vehicle

actually belonged to Scott.  Although Respondent contends that this claim is

unexhausted and procedurally defaulted because the claim lack merit the Court will

address the substance of the claim.

The state court denied this grounds and wrote:

As to ground (D), Defendant alleges newly discovered evidence in the
form of an affidavit from the "true perpetrator." Defendant contends that
his cousin Reginald committed the instant offenses, not him. According to
Defendant, he was aware of this fact prior to trial, but he "did not want to
implicate his cousin for something that he believed he could win at trial....
Defendant thought that nothing could be gained by linking his cousin to
this crime." First, according to the Department of Corrections website,
affiant Reginald Scott (DC# G01718) was incarcerated in the Department

of Corrections (for Orange County case number 48-2003-CF-005250-A
and 48-2003-CF-003028-A) on the date that the instant offenses occurred
(October 1, 2004). He could not have been in Gainesville with Defendant
at that time. Second, the cooperating defendant, Wayne Dunbar,
identified Defendant at trial as the person whom he spoke with regarding
the purchase of cocaine. *See* Trial Transcript at 149 (lines 22-25) -152
(lines 1-19), 161 (lines 4-20), 176 (lines 11-15), 178 (lines 1-4). Third,
Defendant fails to show how the information is newly discovered.
Defendant alleges he has known that is cousin committed the instant
offenses since the day they were committed. And, Defendant admittedly
told no one of this fact, including his trial counsel and postconviction
counsel. Thus, the information contained in the affidavit is not newly
discovered evidence. This claim is without merit

Doc. 28-5 at 121-22.

Under § 2254(e)(1), "a determination of a factual issue made by a State court

shall be presumed to be correct," and the petitioner "shall have the burden of rebutting

the presumption of correctness by clear and convincing evidence."  *Burt v. Titlow,* ___

*U.S.* ___,  2013 WL 5904117, *4.  Petitioner has not shown that the factual

determination made by the state was unreasonable.  Indeed, the Court can

independently confirm that the Department of Corrections website lists Reginald Scott,

DC#G01718, as incarcerated from August 8, 2003 to October 22, 2004.  The offense

occurred on October 1, 2004, and therefore Mr. Scott could not have been the

perpetrator, as Petitioner alleges.  The facts recited by Petitioner in no way suggest that

the state court's determination of this claim is subject to fairminded disagreement, and

accordingly, he is entitled to no relief.

### Ground 5: "Petitioner's conviction was obtained in violation of his Fifth and Fourteenth Amendment rights of due process as applied where the law upon which the prosecution is founded suffers infirmities that violate the void-for-vagueness doctrine of the United States Constitution."

Petitioner contends that Fla. Stat. § 934.03 constitutes "an unlawful delegation of

authority" and "violates the separation of powers doctrine of the United States

Constitution because it permits one branch of government to dictate to a separate

branch how to conduct its affairs."  Doc. 1 at 17.

Respondent points out that Petitioner did not raise this claim in his 3.850 motion,

filed in Alachua County.  Rather, Petitioner presented this claim in his  "Petition for Writ

of Habeas Corpus" in Columbia County.  The state court denied this ground as follows:

> On February 6, 2006, the Petitioner was sentenced to seven years in the
> Department of Corrections (DOC) for Possession with Intent to Sell or
> Deliver Cocaine. During the Petitioner's jury trial, the State relied upon
> information obtained from a wiretapped telephone conversation between
> the Petitioner and a confidential informant. In the instant petition, the
> Petitioner challenges the constitutionality of § 934.03(2)(c), Fla. Stat., the
> statute authorizing law enforcement to intercept the Petitioner's telephone
> conversation.
>
> Section 934.03, Fla. Stat., provides:
>
>> It is lawful under ss. 934.03-934.09 for an investigative or
>> law enforcement officer or a person acting under the
>> direction of an investigative or law enforcement officer to
>> intercept a wire, oral, or electronic communication when
>> such person is a party to the communication or one of the
>> parties to the communication has given prior consent to
>> such interception and the purpose of such interception is to
>> obtain evidence of a criminal act.
>
> The Petitioner does not argue that the statute on its face is
> unconstitutional. Rather, the Petitioner contends that Florida courts have
> improperly interpreted and applied this provision, rendering its application
> unconstitutional. Specifically, the Petitioner argues that interception of a
> wire, oral, or electronic communication, *without obtaining a court order*,
> unconstitutionally infringes on the Petitioner's constitutional right to
> privacy. The Petitioner further argues that the Florida legislature intended
> that a court order be obtained prior to intercepting pursuant to § 934.09,
> Fla. Stat. In relevant part, § 934.09(1), Fla. Stat. provides: "Each
> application for an order authorizing or approving the interception of a wire,
> oral, or electronic communication under ss. 934.03- 934.09 shall be made
> in writing upon oath or affirmation to a judge of competent jurisdiction and
> shall state the applicant's authority to make such application ..." The

Petitioner argues that this provision applies to § 934.03(2)(c), Fla. Stat. This argument is without merit.

First, the Petitioner's argument, that admission of the intercepted phone call as applied was unconstitutional, could have been raised on direct appeal. Habeas corpus should not be used as a vehicle for presenting issues that should have been raised at trial and on direct appeal. Green v. State, 975 So.2d 1090, 1115 (Fla. 2008); Zuluaga v. State, Dept. of Corrections, 32 So.3d 674, 677 (1st DCA 2010).

Second, the Petitioner has failed to show that he is entitled to immediate release. "Habeas corpus relief requires showing a right or entitlement to immediate release from custody." Krish v. Greadington, 425 So.2d 153 (1st DCA 1983). The Petitioner is challenging the constitutionality of a statute governing the admissibility of evidence. Thus, even assuming that this Court agree that § 934.03, Fla.Stat., as interpreted and applied by Florida courts, is unconstitutional, this would simply mean the admission information obtained from the intercepted phone call was improper. This finding, in of itself, would not entitle the Petitioner to immediate release. In contrast, in cases where habeas corpus has been used to challenge the constitutionality of a statute, the challenge has been to the statute upon which the defendant is being held. See Sandstrom v. Leader, 370 So.2d 3, 5 (Fla. 1979) ("a writ of habeas corpus may be utilized by an accused to challenge the constitutionality of a statutory provision *under which he is charged*") (emphasis added). The reasoning behind this doctrine is that a judgement of conviction and sentence imposed under an unconstitutional statute is void. See State ex rel Smith v. Cochrane, 112 So.2d 605 (2d DCA 1959) (petitioner was entitled to immediate release because he was charged by information for violating a statute declared unconstitutional). Hence, in these cases, the connection between the unlawful detention and unconstitutional statute is direct. Here, however, the chain of connection is separated by several links - because § 934.03, Fla.Stat., is unconstitutional, information obtained from the intercepted call should not have been admitted, therefore, the State's case would have been weak, causing the Petitioner to be found not guilty and, hence, the Petitioner's current detention is unlawful. Accordingly, this argument is more properly raised at trial, direct appeal, or a post-conviction motion, rather than a petition for writ of habeas corpus.

Finally, the Petitioners's arguments have been previously addressed and ruled to be meritless. First, the Florida Supreme Court has held § 934.03(2)(c), Fla. Stat., to be constitutional under both the United States and Florida Constitutions. See State v. Hume, 512 So.2d 185 (Fla. 1987). Second, several Florida appellate courts, including the First District Court of Appeal, have held § 934.09, Fla. Stat., has no application to

interceptions made pursuant to § 934.03(2)(c), Fla. Stat.. See Campbell v. State, 365 So.2d 751, 753 (1st DCA 1978); Sarno v. State, 424 So.2d 829, 834 (3d DCA 1982) ("Since [the confidential informant] validly consented to the mid-September interceptions and was working in conjunction with law enforcement officers, evidence from telephones to which he was a party is admissible *even without a court order*.") (emphasis added). Insomuch as the Petitioner is arguing that these appellate courts have improperly interpreted and applied § 934.03(2)(c), Fla. Stat., this Court is without jurisdiction to address this issue. The Court is bound by the precedent set forth by the First District Court of Appeal. [fn 1] Accordingly, the instant petition is DENIED.

[fn 1] As explained by the Fourth District Court of Appeal: In Florida[,] the District Court of Appeals are courts of final appellate jurisdiction except for a narrow classification of cases made reviewable by the Florida Supreme Court. The District Courts of Appeal are required to follow Supreme Court Decisions. As an adjunct to this rule[,] it is logical and necessary in order to preserve stability and predictability in the law that, likewise, trial courts be required to follow the holdings of the higher courts - [the] District Courts of Appeal. State v. Hayes, 333 So.2d 51, 53 (4d DCA 1976) (citations omitted).

Doc. 28-9 at 75-77.

The state court determined that Petitioner's claim was procedurally barred because Petitioner should have raised this issue on appeal, rather than in a petition for writ of habeas corpus. Thus, because the petition did not entitle Petitioner to immediate release the claim should not have been brought in a habeas petition but rather should have been raised on direct appeal.  Accordingly, this claim is procedurally defaulted.

Federal habeas courts are precluded from reviewing the merits of procedurally defaulted claims unless the petitioner can show either (1) cause for the failure to properly present the claim and actual prejudice from the default, or (2) that a fundamental miscarriage of justice would result if the claim were not considered.  *Id*. at 1302, 1306.  Petitioner does not allege, nor has he demonstrated, that he can show cause for his failure to properly present this claim to the state courts, or that a

fundamental miscarriage of justice would occur if these claims were not considered by this Court.  Indeed, Petitioner declined the opportunity to file a reply to Respondent's response.  Accordingly, this claim is procedurally barred and therefore there is no need for this Court to consider these claims on federal collateral review.

### Certificate of Appealability

Section 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

Rule 11(a) also provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED:**

1. The petition for writ of habeas corpus, Doc. 1, should be **DENIED**.

2.  A certificate of appealability should be **DENIED.**

**IN CHAMBERS**  this 4th  day of February, 2015.

*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

**NOTICE TO THE PARTIES**

A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.